UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BILLY CHANCEY, | Case No. 2:24-cv-02199-RFB-NJK |
| Plaintiff, | **ORDER** |
| v. | |
| TRINITY KITCHEN, | |
| Defendant. | |

*Pro se* Plaintiff Billy Chancey, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint under 42 U.S.C. § 1983, and he has applied to proceed *in forma pauperis*. See ECF Nos. 1-1, 1. For the following reasons, the Court finds that Chancey fails to state a colorable claim and dismisses the complaint without prejudice and with leave to amend.

I.   FACTUAL ALLEGATIONS

The events of the complaint happened while Chancey was incarcerated at Clark County Detention Center ("CCDC"). Chancey alleges that Defendant Trinity Kitchen was responsible for preparing meals at CCDC. Trinity Kitchen employees refused to provide Chancey a menu, so he could not ensure that he was receiving the meals that he was supposed to receive each day. Trinity Kitchen claimed that it provided inmates 2800 calories per day, but without a menu Chancey could not confirm that.

On October 21, 2023 (at dinner), and December 6, 2023 (at breakfast), Chancey felt like there was sperm biting his tongue, throat, and trachea while he was eating. Chancey could feel tails wagging as he ate his food. Chancey threw up from the food.

Trinity Kitchen employees prepared the meals in two groups. All the even trays were the

same, and all the odd trays were the same, but the even and odd trays were not identical to each other. Therefore, Chancey's tray was always the same as half of the other inmates, but different than the other half, and so Chancey always received "an unequal portion."

## II.     SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity, or an officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. See Cato v. U.S., 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. See Chappel v. Lab. Corp. of Am., 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that

1  would entitle them to relief. See Morley v. Walker, 175 F.3d 756, 759 (9th Cir. 1999). In making
2  this determination, the Court takes as true all allegations of material fact stated in the complaint
3  and construes them in the light most favorable to the plaintiff. See Warshaw v. Xoma Corp., 74
4  F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent
5  standards than formal pleadings drafted by lawyers. See Hughes v. Rowe, 449 U.S. 5, 9 (1980).
6  While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff
7  must provide more than mere labels and conclusions. See Bell Atl. Corp. v. Twombly, 550 U.S.
8  544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. See id.

9  A reviewing court should "begin by identifying [allegations] that, because they are no more
10 than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679
11 (2009). "While legal conclusions can provide the framework of a complaint, they must be
12 supported by factual allegations." Id. "When there are well-pleaded factual allegations, a court
13 should assume their veracity and then determine whether they plausibly give rise to an entitlement
14 to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-
15 specific task that requires the reviewing court to draw on its judicial experience and common
16 sense." Id.

17 All or part of a complaint filed by an incarcerated person may therefore be dismissed *sua*
18 *sponte* if the claims lack an arguable basis either in law or in fact. This includes claims based on
19 legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or
20 claims of infringement of a legal interest that clearly does not exist), as well as claims based on
21 fanciful factual allegations (e.g., fantastic or delusional scenarios). See Neitzke v. Williams, 490
22 U.S. 319, 327–28 (1989); see also McKeever v. Block, 932 F.2d 795, 798 (9th Cir. 1991).

### III. DISCUSSION

Based on the allegations summarized above, Chancey sues Defendant Trinity Kitchen. He seeks monetary and injunctive relief. He checks boxes stating that he was deprived of basic necessities, and that there was a threat to his safety. Based on these allegations, the Court liberally construes the complaint as bringing two Eighth Amendment conditions of confinement claims regarding the lack of menus and the contamination of his food and an equal protection claim under

the Fourteenth Amendment. The Court addresses these claims below.

### A. Lack of Menus and Sperm in Food

The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the Court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. See Wright v. Rushen, 642 F.2d 1129, 1133 (9th Cir. 1981). As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to unconstitutional conditions of confinement to establish an Eighth Amendment violation. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). When evaluating conditions of confinement, the Court should consider the amount of time that the prisoner was subjected to a condition. Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005).

"The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Id. Isolated instances of food poisoning or temporary lapses in sanitary food service are not sufficiently serious to constitute an Eighth Amendment violation. See, e.g., Morris v. Jennings, No. 2:13-cv-1134 AC P., 2013 WL 5970444, at 2 (E.D. Cal. Nov. 8, 2013) (prisoner's allegations of unidentified foreign object, hair, or sweat in food, along with stomach problems, failed to state a cognizable Eighth Amendment claim); Bennett v. Misner, No. Civ.02-1662-HA, 2004 WL 2091473, at 20 (D. Or. Sept. 17, 2004) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation.").

"For purposes of claims brought under § 1983, a private entity . . . is treated as a municipality" and is subject to Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978). See Denson v. Gillespie, No. 2:10-cv-00525-APG, 2015 WL 56037, at 2 (D. Nev. Jan. 5, 2015); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1139 (9th Cir. 2012) (holding that "the requirements of Monell do apply to suits against private entities under § 1983"). To make out a claim against a private entity under Monell, a plaintiff must show that (1) the private entity acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of the private entity. See Tsao, 698 F.3d at 1139.

### i. Lack of menus.

The Court finds that Chancey fails to state a colorable claim based on the allegation that Trinity Kitchen failed to provide him menus. The Constitution does not require that prisons or jails provide menus of meals to people in prison. It only requires that prisons and jails provide food that is adequate to maintain their health. Chancey states that without a menu he was not able to confirm that he was receiving the full 2,800 calories that Trinity Kitchen claimed it provided him. But Chancey does not allege that he received inadequate food or that he suffered any health consequence because the food was inadequate to maintain his health. The Court dismisses Chancey's claim based on the lack of menus with prejudice, as amendment would be futile.

However, to the extent that Chancey believes that the meals Trinity Kitchen provided were inadequate to maintain his health, he may bring a claim on that basis in an amended complaint. To state a colorable claim against Trinity Kitchen, he must allege specific facts that show that the meals prepared by Trinity Kitchen were inadequate to maintain his health, and that the failure to provide adequate meals was the result of an official policy or custom of Trinity Kitchen.

### ii. Sperm in food.

The Court finds that Chancey fails to state a colorable claim based on the allegation that there was sperm in his food. As an initial matter, the Court notes that sperm are microscopic. As such, it would be impossible for Chancey to feel sperm biting him or wiggling as he was eating. Thus, Chancey's belief that there was sperm in his food is not supported by his claim that he felt biting and wiggling. For purposes of this screening order, the Court will assume that Chancey's

food was contaminated by some unknown substance.

However, even assuming that Chancey's food was contaminated on two occasions, he fails to state a colorable claim for two reasons. First off, isolated lapses in sanitation, even those giving rise to food poisoning, are not sufficiently serious to give rise to an Eighth Amendment claim. Furthermore, even if the contamination of Chancey's food was sufficiently serious to support an Eighth Amendment claim, Chancey does not allege any facts to support that the contamination was the result of any official policy or custom of Trinity Kitchen. Thus, Chancey cannot support a Monell claim against Trinity Kitchen on this basis.

The Court dismisses this claim without prejudice and with leave to amend. In order to state a colorable claim against Trinity Kitchen on this basis, Chancey must allege a more serious, persistent contamination of his food, and that the contamination of his food was the result of an official policy or custom of Trinity Kitchen.

### B. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all similarly situated persons be treated equally under the law. See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). In order to state an equal protection claim, a plaintiff must allege facts demonstrating that defendants acted with the intent and purpose to discriminate against him based upon his membership in a protected class, or that defendants purposefully treated him differently than similarly situated individuals without any rational basis for the disparate treatment. See Lee v. City of L.A., 250 F.3d 668, 686 (9th Cir. 2001); see also Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In Olech, the Supreme Court explicitly addressed "whether the Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff did not allege membership in a class or group." Olech, 528 U.S. at 564. The Supreme Court ruled in the affirmative and "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. The Supreme Court held that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person

within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Id.

A person cannot state an equal protection claim merely by dividing all persons not injured into one class and alleging that they received better treatment than the plaintiff did. See Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005). The Fourteenth Amendment's Equal Protection Clause does not require that states treat all persons within their borders identically. See McGowan v. Maryland, 366 U.S. 420, 425 (1961) ("[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others" so long as the classification does not rest on grounds "wholly irrelevant to the achievement of the State's objective."); Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013). Furthermore, to state a class-of-one equal protection claim, a plaintiff must identify the group of individuals with whom she is similarly situated, identify the allegedly intentional and disparate treatment, and allege that there was no rational basis for the different treatment. See Gerhart v. Lake Cty., Mont., 637 F.3d 1013, 1022 (9th Cir. 2011). "Similarly situated" persons are those "who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

The Court finds that Chancey fails to state a colorable equal protection claim. Chancey does not allege that he was discriminated against because of his membership in a protected class. Nor does he allege that he was deliberately treated differently than similarly situated individuals without any rational basis for the disparate treatment. Chancey alleges that two different sets of meals were prepared, and half of the prisoners got one set of meals while the other half of prisoners got the other set of meals.

It is not clear from the allegations whether the meals were significantly different or just superficially different. It is not clear whether the meals were deliberately made differently or simply ended up slightly different because they were prepared by a different group of culinary employees or prepared in two separate batches. For example, if two batches of cookies are made, one batch may be slightly more cooked than the other. Chancey does not allege that either batch was better or worse, and he does not allege that he was deliberately given worse or smaller meals.

Rather, it appears from the allegations that it was completely random based on the order that Chancey got in line for food. One day he might have gotten the even meal and the next day he might have gotten the odd meal.

These allegations do not support that Chancey was deliberately treated differently than similarly situated inmates. In any jail or prison, different people will have slightly different circumstances, some might have an east facing window or a west facing window, or no window at all. Some might be on the first floor, while others are on the second or third floors. Some might be designated to eat at an earlier time while others are designated to eat at a later time. They may have yard privileges or tier privileges at different times. The Constitution does not require that every single circumstance be identical—a requirement that would be impossible to fulfill. Rather, the Constitution only requires that individuals not be deliberately discriminated against without any rational basis for the disparate treatment.

It is not possible to ensure that every cookie, every slice of pizza, or every piece of fruit is exactly the same. The allegations in the complaint about even and odd meals being different do not support a colorable equal protection claim so the Court dismisses this claim. Although it does not appear that Chancey can state a colorable equal protection claim in an amended complaint, in light of his *pro se* status, the Court will dismiss this claim without prejudice. If, after reviewing this screening order, Chancey believes that he can state a colorable equal protection claim, he may bring that claim in an amended complaint.

### C. Leave to Amend

Because it is not clear from the face of the complaint that Chancey cannot cure the defects in his claims, the Court grants him leave to file a first amended complaint to attempt to replead these claims. This means Chancey has leave to correct the claims' defects, as identified above. Chancey does not have leave to add new claims.

If Chancey chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in of itself. See Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1989). This means Chancey's amended complaint must contain all claims, defendants, and factual allegations that he

wishes to pursue in this lawsuit. Chancey should file the amended complaint on this Court's approved prisoner civil-rights form, and it must be titled "First Amended Complaint." Chancey must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each claim, he should allege facts sufficient to show what each defendant did to violate his civil rights.

### D. Pretrial Motion

Chancey filed a motion stating that he believes that an order was sent out regarding the filing fee in this case. See ECF No. 3. He asks the Court to resend that order, or any other previous order. This is the first order that the Court has issued in this case. As such, Chancey has not missed any orders, and the Court denies his request to resend any previous orders as moot.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the application to proceed *in forma pauperis* (ECF No. 1) is **DEFERRED**.

**IT IS FURTHER ORDERED** that the Clerk of Court file Chancey's complaint (ECF No. 1-1) and send Chancey a courtesy copy of the complaint.

**IT IS FURTHER ORDERED** that Chancey's Eighth Amendment claim based on not being provided menus for his meals is **DISMISSED** with prejudice, as amendment would be futile. Nevertheless, Chancey is given leave bring an Eight Amendment claim based on not being provided sufficient food to maintain his health, if he believes that he can state a colorable claim on that basis in an amended complaint.

**IT IS FURTHER ORDERED** that Chancey's Eighth Amendment claim based on food contamination is **DISMISSED** without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that Chancey's equal protection claim is **DISMISSED** without prejudice and with leave to amend.

**IT IS FURTHER ORDERED** that Chancey's motion to resend any previous Court Orders (ECF No. 3) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Chancey has until **November 13, 2025**, to file an amended complaint.

**IT IS FURTHER ORDERED** that if Chancey does not file an amended complaint by **November 13, 2025,** this action will be subject to dismissal without prejudice for failure to state a claim for relief.

The Clerk of Court is **DIRECTED** to send Plaintiff **Billy Chancey** the approved form for filing a 42 U.S.C. § 1983 complaint with instructions for the same.

DATED: September 29, 2025.

_____
RICHARD F. BOULWARE, II
UNITED STATES DISTRICT JUDGE